UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARLA A. SANTOS and
LAWRENCE E. SANTOS,

   Plaintiffs,

v.

FARMERS INSURANCE EXCHANGE,
a foreign corporation, and ARRON PIETEILA
and SARAH PIETILA d/b/a Arron & Sarah
Pietila Agency,

   Defendants.
_____/

CASE NO. 07-11229
HON. LAWRENCE P. ZATKOFF

**OPINION AND ORDER**

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on February 22, 2008

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I. INTRODUCTION**

This matter is before the Court on Plaintiffs' Motion for Partial Summary Judgment (Dkt. #31). Defendant Farmers Insurance Exchange (Farmers) filed its response on January 11, 2008, and Plaintiffs have since replied. The Court finds that the facts and legal arguments are adequately presented in the parties' papers, and the decision process would not be significantly aided by oral argument. Therefore, pursuant to E.D. Mich. LR 7.1(e)(2), it is hereby ORDERED that the motion be resolved on the briefs submitted. For the reasons set forth below, Plaintiffs' motion is DENIED.

**II. BACKGROUND**

The factual and procedural background of this case is adequately set forth in the Court's previous Opinions and Orders, and is only recounted here to the extent necessary to decide the present motion. This action arises out of an automobile accident on April 8, 2001, in which Plaintiff Marla

Santos (Mrs. Santos) was seriously injured. At the time of the accident, Plaintiffs were insured by two insurance policies issued by Farmers. The primary policy provided for benefits required by Michigan's No-Fault Act, as well as additional underinsured motorist (UIM) benefits up to $500,000. The second, umbrella, policy also provided for UIM benefits for damages exceeding the limits of the primary policy up to $1 million. Shortly after the accident, Plaintiffs notified Farmers of the incident and of their intent to make a claim for insurance benefits.

Upon learning that the at-fault driver's insurance would be inadequate to cover Mrs. Santos's injuries, Plaintiffs made a claim under their primary policy for UIM benefits. Plaintiffs identified the primary policy as the basis for their claim and did not specifically make a claim for benefits under the umbrella policy. Plaintiffs eventually settled with the other driver for $25,000, which was the limit of his liability insurance coverage. Plaintiffs then pursued the UIM benefits under their primary policy through arbitration. During this process, Plaintiffs maintained correspondence with Farmers and complied with their duties under the primary policy, providing the detailed police report and Mrs. Santos's medical records, submitting to an interview, and otherwise cooperating with Farmers. In a letter to Farmers dated August 23, 2002, Plaintiffs provided Mrs. Santos's medical records and indicated that "Mrs. Santos sustained an injury worth well in excess of your policy limits of $500,000, minus the policy limits of the third-party tortfeasor who caused the accident ($25,000)." Dkt. #11, Ex. 1.

The parties' arbitration resulted in an award of $475,000 to Plaintiffs. This represented the limit of their primary insurance with a set-off for the settlement with the at-fault driver. Despite the fact that $500,000 was still not enough to cover Mrs. Santos's injuries, Plaintiffs executed a satisfaction of the arbitration award and released Farmers from all UIM claims under the primary policy.

Three years after completing the arbitration with Farmers, Plaintiffs raised the issue of coverage under the umbrella policy with their attorney. Plaintiffs then filed the present suit, claiming Farmers breached the umbrella policy by not processing a claim for UIM benefits under that policy at the same time it processed the claim for benefits under the primary policy. Plaintiffs now seek partial summary judgment as to Farmers' liability for breach of the umbrella policy.

## III. LEGAL STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *accord Turner v. City of Taylor*, 412 F.3d 629, 637 (6th Cir. 2005). When deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A genuine issue of material fact exists when there is "sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (citations omitted).

## IV. ANALYSIS

### A. Plaintiffs' Insurance Policies and Arguments

This case involves UIM coverage provided in Plaintiffs' umbrella insurance policy. The umbrella policy is, by and large, a liability policy that provides excess insurance for liabilities that are insured by other specified policies. In addition, the umbrella policy contains an endorsement that adds UIM benefits. As part of the umbrella policy, the UIM endorsement "supercedes and controls anything to the contrary," but "is otherwise subject to all other terms of the policy." Def.'s Ex. 8. The

endorsement further provides that "[f]or the additional premium paid, it is agreed that this policy will provide Uninsured and/or Underinsured Motorist Coverage(s) to you or any other insured under this policy, to the extent that either or both coverages are a part of the underlying insurance, except for our limit of liability." *Id.* Plaintiffs' primary policy is included in the umbrella policy's Declarations and provides UIM coverage up to $500,000. *Id.* Thus, the scope of the umbrella policy's UIM coverage is identical to the coverage in the primary policy, and it provides benefits for losses exceeding $500,000.

Pursuant to the primary policy, Farmers must "pay all sums which an insured person is legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle because of bodily injury sustained by the insured person." Pls.' Ex. 1. Following an accident, the primary policy requires the insured to promptly notify Farmers of the time, place and circumstances of the accident, including the names and addresses of injured persons and witnesses. *Id.* Similarly, the umbrella policy outlines the insured's responsibilities after an accident, and states in relevant part: "if an occurrence is likely to involve coverage under this policy, you shall promptly advise us or our agent of: (1) how, when, and where the occurrence took place; and (2) names and addresses of the injured and all witnesses." Def.'s Ex. 8. Lastly, the primary policy required Plaintiffs to make a specific claim for UIM benefits and provided a procedure for resolving coverage disputes. *See* Pls.' Ex. 1. The umbrella policy is silent on these subjects.

Plaintiffs argue that they are entitled to partial summary judgment based on evidence suggesting that they provided proper notice to Farmers under the umbrella policy, which in turn obligated Farmers to process a claim under that policy. Plaintiffs argue that Farmers breached the contract since it neither processed a claim nor informed them of UIM benefits in the umbrella policy. In response, Farmers argues that it did not breach the umbrella policy because (1) Plaintiffs failed to

4

adequately notify it of an occurrence, which is a condition precedent to receiving benefits and (2) no determination had been made whether Plaintiffs were entitled to more than the primary policy limits.

**B.     Whether Plaintiffs' Notice to Farmers was Sufficient**

Plaintiffs argue that their repeated correspondence with Farmers detailing the circumstances of the accident and the extent of Mrs. Santos's injuries and medical expenses was sufficient to make a claim for UIM benefits under the umbrella policy. Farmers disagrees, and argues that in order to make a claim under the umbrella policy, Plaintiffs had to provide notice that coverage under the umbrella policy was likely. As explained below, the Court disagrees with Farmers' interpretation, and finds that Plaintiffs' correspondence with Farmers substantially complied with the plain language of the umbrella policy.

Farmers contends that Plaintiffs failed to comply with the umbrella policy's conditions because they did not notify Farmers that Mrs. Santos's accident was "likely to involve coverage" under the umbrella policy. Insurance policies are ordinary contracts and "are subject to the same contract construction principles that apply to any other species of contract." *Rory v. Continental Ins. Co.*, 703 N.W.2d 23, 26 (Mich. 2005). As such, the Court must "enforce the contract as written if it fairly allows but one interpretation." *Morley v. Auto. Club of Michigan*, 581 N.W.2d 237, 240 (Mich. 1998). In doing so, the Court must give meaning to each provision of the policy. *See Scott v. Farmers Ins. Exch.*, 702 N.W.2d 681, 683 (Mich. Ct. App. 2005). The proper interpretation of a contract is a question of law, *Wilkie v. Auto-Owners Ins. Co.*, 664 N.W.2d 776, 780 (Mich. 2004), and the Court's ultimate goal is to enforce the agreement intended by the parties, *Engle v. Zurich-American Ins. Grp.*, 583 N.W.2d 484, 485 (Mich. Ct. App. 1998).

The umbrella policy states that "if an occurrence is likely to involve coverage under this policy" then the insured must provide certain information to Farmers. Def.'s Ex. 8. The plain

5

language of the policy does not require that the insured specifically state that coverage is likely, or that she is claiming benefits under that specific policy; rather, if the insured believes she is entitled to benefits under the umbrella policy, she must notify Farmers of "how, when and where the occurrence took place," and provide the "names and addresses of the injured and all witnesses." *Id.* Stated another way, the phrase "if an occurrence is likely to involve coverage" dictates *when* notice is required more so than *what* information the notice must provide, which the policy expressly lists. *See id.* (stating the insured must inform Farmers of "how, when and where the occurrence took place; and [the] names and addresses of the injured and all witnesses"). As a result, Farmers is incorrect to suggest that Plaintiffs had to specifically notify Farmers that coverage under the umbrella policy was likely. Moreover, Plaintiffs plainly satisfied the substantive requirements in the present case when they provided the detailed police report of the accident, maintained consistent correspondence with Farmers, participated in interviews, supplied medical records, and specifically stated that "Mrs. Santos sustained an injury worth well in excess of your policy limits of $500,000."

The Court's interpretation is consistent with the sharp distinction between primary and excess insurance policies. Although the "fundamental principles governing notice to primary insurers also apply to excess insurers ... some systematic differences between primary and excess insurance lead to differences in the application of the principles." *Tribune Co. v. Allstate Ins. Co.*, 715 N.E.2d 263, 271 (Ill. Ct. App. 1999). An insurer's obligation to pay benefits under an umbrella policy providing excess coverage only arises "once the limits of all underlying insurance have been exhausted." *Bosco v. Bauermeister*, 571 N.W.2d 509, 516 (Mich. 1997) (explaining the nature of excess insurance in light of its role in the insurance industry, the premiums charged for and risks assumed by the policies, the language of the policies, and the reasonable expectations of all the contracting parties); *see also* 23 Eric Mills Holmes & John Alan Appleman, *Appleman on Insurance Law and Practice* § 145.1 (2d ed.

2003) (*Appleman on Insurance*). "The 'rubbery language' of [notice provisions in excess policies] is designed to give 'the insured some leeway or discretion in forming a judgment about when ... protection is implicated.'" *Aetna Cas. & Surety Co. v. Dow Chem. Co.*, 10 F. Supp. 2d 800, 809 (E.D. Mich. 1998) (quoting *Employers' Liab. Assurance Corp., Ltd. v. Hoechst Celanese Corp.*, 684 N.E.2d 600, 606 (Mass. Ct. App. 1997)). As the Illinois Court of Appeals explained:

> [E]xcess policies generally do not require immediate notice of an occurrence as do provisions in primary policies. Excess insurers are not interested in every accident, [] but only in those that may be serious enough to involve [them]. Since excess coverage is contingent on exhaustion of primary or underlying policies, excess insurers generally do not require notification of occurrences until the excess policy is reasonably likely to be implicated. Consequently, insurance policies for excess coverage grant the insured some discretion in evaluating the case.

*Tribune Co.*, 715 N.E.2d at 271-72 (internal citations and quotations omitted). This distinction is readily observable in this case. The primary policy's notice provision merely requires notice of the accident, without any mention of whether coverage is likely. On the other hand, since Farmers, as an excess insurer, ordinarily expects notice for UIM claims under the umbrella policy only in extreme circumstances, the umbrella policy requires notice only "if an occurrence is likely to involve coverage." This is due to the fact that Farmers' liability on the primary policy is automatic upon the happening of the accident whereas Farmers' liability under the umbrella policy only attaches once the limits of the primary policy have been exhausted.

Given this distinction, the provision requiring notice "if an occurrence is likely to involve coverage" is designed to protect the insured as much as it is designed to provide notice of an occurrence to the insurer. Farmers is protected because, consistent with the purpose of notice provisions in general, it is still afforded the opportunity to conduct a meaningful investigation, determine factual issues, estimate its rights and liabilities, and assess the adequacy of its reserves. *See* 22 *Appleman on Insurance* §§ 139.1-2. Thus, upon receiving the information expressly required in

the umbrella policy's notice provision, Farmers can make its own determination as to whether coverage is likely. At the same time, the "rubbery language" of the umbrella policy protects an insured by effectively preventing Farmers from raising the lack of notice as a defense before the insured has a reasonable time to ascertain whether excess coverage is necessary.

Even if Plaintiffs' notice to Farmers was somehow deficient, Farmers cannot rely on that deficiency to deny coverage in this case. When an insurer attempts to disclaim liability because of an alleged failure to comply with the notice provision, the insurer must establish actual prejudice to its position. *Koski v. Allstate Ins. Co.*, 572 N.W.2d 636, 639 (Mich. 1998). "[I]f the insurance company received adequate and timely information of the accident ... it is not prejudiced, regardless of the source of the information." *Id.*; *see also Burgess v. Am. Fid. Fire Ins. Co.*, 310 N.W.2d 23, 25 (Mich. 1981) (finding that any prejudice suffered by the insurer was not material where, upon notice, the insurer did not "act or properly act to protect its interest and/or that of its insured").

As stated previously, Plaintiffs clearly presented more than mere notice of their loss. Mrs. Santos's medical records alone contained a wealth of information regarding the extent of her injuries and the nature of her medical care to that point, including billing information, diagnoses of injuries, and prognoses for recovery. In response, Farmers' claims adjuster stated that Plaintiffs' correspondence only referred to the primary policy, that she had no reason to believe Plaintiffs' claim was worth more than $500,000, and that she did not evaluate it to be worth more than the limits of the primary policy. *See* Def.'s Ex. 12 at ¶¶ 4-5, 11, 19. This evidence, however, does not refute the substantial evidence that Farmers possessed sufficient information to process a claim for benefits under the umbrella policy.

Farmers, as the primary insurer, was intimately involved in this case from its inception and worked closely with Plaintiffs and their counsel. Significantly, Farmers has not argued any

deficiencies in the notice or claim requirements relating to Plaintiffs' UIM claim under the primary policy. This is an important point: Plaintiffs' UIM claim under the primary policy provided Farmers with all of the information it needed to process and pay a UIM claim. However, in addition to the bare minimum required to make a claim under the primary policy, Plaintiffs provided information to Farmers indicating the need to access UIM benefits under the umbrella policy. Since Farmers had adequate information to invoke the UIM benefits under the primary policy, as well as information indicating that the umbrella policy would be implicated, Farmers was in possession of facts that should have alerted it that it may be liable as the excess insurer as well. *See Joiner v. Michigan Mut. Ins. Co.*, 357 N.W.2d 875, 878-79 (Mich. Ct. App. 1984). Therefore, Farmers was in a position to protect all of its rights under the umbrella policy. *See, e.g.*, *Burgess*, 310 N.W.2d at 25 (concluding that any prejudice to the insurer "was not attributable, in the ultimate sense, to the insured's failure to give notice of suit, but rather to the insurance carrier's failure to act upon receiving notice."). On the record before the Court, it is clear that Farmers was not prejudiced by any non-compliance on Plaintiffs' part, and, consequently, it cannot rely on any non-compliance with the notice provision in the umbrella policy. The Court must now address whether Farmers breached the umbrella policy.

**C.      Whether Farmers Breached the Umbrella Policy**

Plaintiffs argue that Farmers breached the umbrella policy because it neither processed Plaintiffs' UIM claim under that policy upon receiving notice of Plaintiffs' claim nor informed them whether coverage was being provided or disputed. On the other hand, Farmers argues that it could not have breached the umbrella policy because no determination had been made that Mrs. Santos's damages exceeded the limits of the primary policy.

As with any other contract, the parties' rights and obligations are determined by the plain language of the insurance policy. *Wilkie*, 664 N.W.2d at 788. Since the umbrella policy contains no

express provision requiring Farmers to act upon receiving notice of an occurrence, the Court rejects Plaintiffs' argument that Farmers was obligated to process a claim under the umbrella policy simply upon receiving their notice. In fact, the policy, as an excess policy, contemplates that Farmers will only have to act once all primary insurance policies have been exhausted; for example, in cases involving claims against the insured, Farmers has the option to participate in the investigation, but is not required to do so. *See* Def.'s Ex. 8. Similarly, when Plaintiffs claimed first-party UIM benefits, Farmers had no obligation under the umbrella policy to process a claim until the underlying insurance was exhausted. Therefore, Farmers' failure to process Plaintiffs' UIM claim under the umbrella policy, on its own, did not constitute a breach of the contract. At the very least, Farmers' evidence indicating that its insurance adjuster did not assess Plaintiffs' claim to be worth more that $500,000 raises issues of fact whether Farmers failed to investigate the possibility of coverage under the umbrella policy.

Furthermore, Plaintiffs' reliance on *Johnson v. State Farm Mut. Auto. Ins. Co.*, 455 N.W.2d 420 (Mich. Ct. App. 1990), *overruled in part by Devillers v. Auto Club Ins. Ass'n*, 702 N.W.2d 539 (Mich. 2005), for the proposition that Farmers had a duty to inform them of the umbrella policy is misplaced. The portion of the *Johnson* opinion Plaintiffs rely on has been overruled, and otherwise does not address the issue of whether an insurance company owes the insured a duty to disclose coverage. Thus, *Johnson* does not support an affirmative duty on the part of the insurer to inform an insured of benefits upon receiving notice of a loss, without more. *See Buntea v. State Farm Mut. Auto. Ins. Co.*, 467 F. Supp. 2d 740, 746 (E.D. Mich. 2006) (finding *Johnson* did not provide persuasive authority to impose an affirmative duty to disclose coverage on an insurer, "especially where no previous court has directly reached such a holding").

Finally, in addition to the duties expressly stated in the insurance agreement, "there is an

implied covenant of good faith and fair dealing which arises from the contract between the insurer and the insured." *Commercial Union Ins. Co. v. Med. Protective Co.*, 393 N.W.2d 479, 482 (Mich. 1986); *see also City of Wakefield v. Globe Indem. Co.*, 225 N.W. 643, 644 (Mich. 1929); *Pollock v. Fire Ins. Exch.*, 423 N.W.2d 234, 236-37 (Mich. Ct. App. 1988); *Murphy v. Cincinnati Ins. Co.*, 576 F. Supp. 542, 544 (E.D. Mich. 1983), *aff'd* 772 F.2d 273 (6th Cir. 1985) (finding that Michigan recognizes a contractual obligation on the part of an insurer to act in good faith and that this duty would necessarily extend to investigating claims 'fairly and reasonably'"). A necessary corollary of this duty is that the insurer will not do anything that hinders or prevents the insured from obtaining benefits under the insurance policy. *See Shapiro v. Patrons Mut. Fire Ins. Co. of Michigan*, 189 N.W. 202, 203-204 (Mich. 1922). A breach of the duty of good faith is a breach of the contract itself. *See id.*; *see also* 14 Steven Plitt, et al., *Couch on Insurance* § 198:8 (3d ed. 1995).

In the present case, Plaintiffs contend that Farmers breached the umbrella policy by not disclosing the existence of the policy under circumstances where the failure to disclose the policy misled Plaintiffs into believing they could only recover under the primary policy. In support of their position, Plaintiffs point to their correspondence with Farmers indicating their belief that the limits of the primary policy would be insufficient to cover Mrs. Santos's injuries, along with Farmers' statements that Plaintiffs' recovery under the primary policy was limited to $500,000, less the amount of settlement with the at-fault driver. Plaintiffs contend that Farmers' statements were misleading under these circumstances because they created the impression that no other coverage was possible, which was false. Plaintiffs' evidence notwithstanding, the Court finds that reasonable jurors could disagree whether Farmers knowingly misrepresented the benefits available to Plaintiffs.

Farmers argues that its representatives were not aware of the existence of the umbrella policy when they stated Plaintiffs were only entitled to recover $500,000. Farmers' evidence does indeed

indicate that its claims adjuster and attorney, both of whom Plaintiffs claim to have misrepresented the available coverage, did not know that excess coverage would likely apply when they corresponded with Plaintiffs. Farmers' claims adjuster stated that she did not evaluate Plaintiffs' claim to be worth more than the limit of the primary policy and, thus, did not foresee the need to invade the umbrella policy. *See* Def.'s Ex. 12, at ¶¶ 11, 13. Farmers' counsel similarly stated that he was not aware of the existence of Plaintiffs' umbrella policy when he indicated that Plaintiffs were only entitled to the limits of their primary policy. *See* Def.'s Ex. 14, at ¶¶ 11-12, 15, 17. Although the Court has serious doubts that Farmers' adjuster had no reason to think that Plaintiffs' claim would exceed the limits of their primary policy, the Court cannot make credibility determinations on a motion for summary judgment. When viewing the evidence in the light most favorable to Farmers, therefore, reasonable jurors could differ as to whether Farmers or its representatives knowingly misrepresented the availability of coverage under the umbrella policy. As such, questions of fact exist that prevent the Court from granting summary judgment in Plaintiffs' favor.

In light of its duty of good faith, Farmers' argument that it cannot be liable for breaching the umbrella policy where no determination had been made that Plaintiffs were entitled to more than $500,000 misses the point. Although Farmers was not obligated to pay benefits under the umbrella policy unless and until the limits of the primary policy were exhausted, Farmers must still act in good faith under the umbrella policy. Farmers, it is true, remains free to contest the amount of damages an insured is entitled to where bona fide disputes exist; but where, as here, Farmers is both the primary and excess insurer, it cannot, consistent with its duty of good faith under the umbrella policy, act in such a way that creates obstacles to the insured's benefits under that policy, including withholding information that if disclosed would allow the insured to exhaust her limits under the primary policy. By remaining silent as to the existence of excess insurance under circumstances where disclosure was

12

necessary to avoid misleading Plaintiffs, Farmers could avoid its obligations under the umbrella policy by essentially preventing Plaintiffs from exhausting their primary policy limits. This would constitute a breach of Farmers' obligation under the umbrella policy to not take any action that would hinder Plaintiffs' rights under that policy. Contrary to Farmers' argument, then, the fact that no determination had been made regarding Mrs. Santos's damages in excess of $500,000 is irrelevant to the breach alleged in this case. *See, e.g., Schwartz v. State Farm Fire & Cas. Co.*, 88 Cal. App. 4th 1329, 1336-37 (2001) (finding the implied duty not to impair an insured's right to benefits exists from the inception of the agreement and is "unconditional and independent of the performance of [the insured's] contractual obligations"). Indeed, it is Farmers' actions that allegedly prevented such a determination in the first place. *See, e.g.*, *Dellar v. Frankenmuth Mut. Ins. Co.*, 433 N.W.2d 380 (Mich. Ct. App. 1988) (estopping an insurer from asserting the insured's noncompliance as a defense where the insurer prevented the insured's compliance by refusing to provide the policy to the insured). "The insurance carrier will not be permitted to benefit by sitting idly by," knowing of its insured's rights, "and watch its insured become prejudiced." *Burgess*, 310 N.W.2d at 25.

## V. CONCLUSION

Based on the foregoing analysis, the Court concludes that material issues of fact exist that preclude granting summary judgment in Plaintiffs' favor. Accordingly,

IT IS ORDERED that Plaintiffs' Motion for Partial Summary Judgment is DENIED.

IT IS SO ORDERED.

s/Lawrence P. Zatkoff                    
                              LAWRENCE P. ZATKOFF
                              UNITED STATES DISTRICT JUDGE

Dated: February 22, 2008

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on February 22, 2008.

                              s/Marie E. Verlinde                      
                              Case Manager
                              (810) 984-3290